## Grimm *v.* Pittsburgh.

Argued February 18, 1971, before President Judge
BOWMAN, and Judges CRUMLISH, JR., KRAMER, WIL-
KINSON, JR., MANDERINO, MENCER and ROGERS.

*Edwin F. Ellis,* for appellant.

*Ralph Lynch, Jr.,* and *Sal L. Farino,* for appellee.

*Harold Gondelman,* with him *William G. Sutter,
Jr.,* and *Joseph Gariti, III,* for Urban Redevelopment
Authority of Pittsburgh, intervenor.

OPINION BY JUDGE MANDERINO, July 22, 1971:

This appeal challenges the validity of a tax sale of
210 vacant lots in the 28th Ward in the City of Pitts-
burgh to the Urban Redevelopment Authority of the
City of Pittsburgh. The 210 lots had been acquired by

three taxing bodies (City of Pittsburgh, School District of Pittsburgh and County of Allegheny) over a period of years. The City of Pittsburgh, acting as trustee for all taxing bodies, petitioned the Court of Common Pleas for approval of the contemplated sale of the properties to the Redevelopment Authority. The Authority participated in the proceedings as an intervenor.

The petition of the City of Pittsburgh requested the court to approve the sale of the properties to the Urban Redevelopment Authority for one dollar. Proper notices having been given after the filing of the petition as required by law, interested persons were permitted to submit other offers for the said properties.

The court received one other offer which was submitted by Louis L. Grimm (Appellant) who offered to purchase the properties for $53,000.

The Court of Common Pleas of Allegheny County approved the sale of the properties for one dollar to the Urban Redevelopment Authority.

Grimm challenges the order of the court below and argues that his offer of $53,000 should have been accepted by the court.

We first note that the law does not require the approval of the sale of these properties to the highest bidder. Rather the law gives discretion to the court to approve a sale that appears to be ". . . in the interest of all taxing authorities having claims against the land. . . ." (Act of July 5, 1947, P. L. 1258; 53 P.S. 26114). Unless the lower court abused its discretion or committed an error of law, we cannot disturb its approval of the petition by the City of Pittsburgh (Trustee).

It may be that if the two offers received by the court both came from relatively equal private citizens, it would be rather difficult for the court not to accept the highest bid. In such a situation perhaps the most

significant consideration might be the amount of money offered by the private citizens for the subject property.

Such is not the case here. The two offers in competition for the subject property came from different sources so far as the public interest is concerned. The proposal of the taxing authorities was to sell the land to a *governmental authority,* namely the Urban Revelopment Authority of Pittsburgh for development in the public interest. The other offer received from appellant Grimm was from a private individual for private development. We think, as the lower court did, that the distinction is important. Since the law allows the court to approve the offer which ". . . appears to be in' the interest of all taxing authorities having claims against the land . . ." (Act of July 5, 1947, P. L. 1258; 53 P.S. 26114), and since this obviously allows the court to take into consideration matters other than price, the lower court properly considered other matters. It is clear that the Act did not intend the court to consider only immediate financial gain to the taxing authorities —namely, price. If such were the law's intention, the Act would have plainly so stated.

The subject properties were designated in February of 1969, by the Planning Commission of the City of Pittsburgh as a redevelopment area to be known as Greenway Redevelopment Project. A redevelopment area plan and a redevelopment area proposal were prepared and approved by the planning commission. On August 7, 1969, the City Council of the City of Pittsburgh approved the redevelopment proposal. These approvals were all conducted pursuant to law with proper notice and opportunity to be heard afforded to all interested parties.

The City of Pittsburgh, as Trustee for the three taxing bodies, then entered into a cooperation agreement with the Urban Redevelopment Authority in order to aid and cooperate in the redevelopment of the

subject properties. All three taxing bodies approved the cooperation agreement entered into calling for the development of the subject properties in accordance with the redevelopment proposal.

The law specifically permits the taxing bodies to donate the subject property to the Urban Redevelopment Authority for proper redevelopment activities. (Redevelopment Cooperation Law, Act of May 24, 1945, P. L. 982, 35 P.S. 1744). Thus the subject properties could have been given directly to the Urban Redevelopment Authority without the necessity of an approved tax sale. The parties state that the tax sale petition proceeding was used because, in the opinion of those concerned, a more secure title could be conveyed to the Urban Redevelopment Authority.

The lower court also had before it detailed redevelopment plans for the area which involved the erection of townhouses and garden apartments. The court concluded that the sale to the Redevelopment Authority would be in the best interests of all the taxing bodies having claims against the land.

The redevelopment of properties is an accepted function of government. *Belovsky v. Redevelopment Authority of City of Philadelphia,* 357 Pa. 329, 54 A. 2d 277 (1967). Such activities are considered to be in the public interest. All three taxing bodies in this case by official action have indicated the desirability of proceeding with the redevelopment of the subject properties. The redevelopment of areas by public authorities obviously involves long-range considerations far beyond the dollar and cents price which the taxing bodies would receive at the time of selling the subject properties. The entire theory of redevelopment is premised on the fact that in the long run the current expenditures of various monies by the Federal, State and local governments, although costly in the initial stages, will, in the long run, prove beneficial to the citizens of a com-

munity, both from a sociological and an economic point of view.

The appellant Grimm may disagree with the entire concept of redevelopment, either specifically as it affects the subject properties or generally. We do not know that he does but we do know that others have seriously challenged the beneficial effects to a community of such activities.

These questions are not before this court as it considers whether or not the lower court abused its discretion. The new planning and redevelopment of an area has been a scheme approved by the legislative and judicial bodies of the Commonwealth and in this particular case approved by all of the governmental entities involved. The court in relying upon the opinion of the taxing bodies that they desired the transfer of these properties to the Urban Redevelopment Authority was within its sound discretion, even though in the short run the taxing bodies may be losing the difference between $53,000 (offered by Grimm) and the $1 figure (sales price to the Redevelopment Authority). Who is to determine whether or not the loss of these funds to the taxing bodies today will not in the next fifty years accrue to the overwhelming benefit of the taxing authorities because the proposed redevelopment of the subject matter has not only provided a proper tax base so far as the subject properties are concerned but also the entire surrounding area in the 28th Ward or the City of Pittsburgh?

We do not feel that a court, in considering an approval of a tax sale from three public taxing bodies to another public body, namely the Redevelopment Authority of Pittsburgh, should ignore the conclusions already reached by the three taxing bodies, namely, that the sale of the subject properties to the Redevelopment Authority would be in the best interests of the City of Pittsburgh, the School District of Pittsburgh,

and the County of Allegheny. Such evidence is highly persuasive.

If the law took a short range of benefit to the taxing authorities involved it could easily have limited the court to only a consideration of the amount of dollars which would be received immediately at the tax sale. When the law goes further and allows the court in its discretion to consider the ". . . interest of all taxing authorities having claims against the land . . .", the court properly considered matters other than the immediate dollar value.

The appellant has also raised questions concerning the original City Planning Commission determination that the area was "blighted" and thus proper for redevelopment. The lower court ably discussed this matter, but we do not think it is relevant in the case before us. This matter has been determined in other proceedings and there has been no challenge that the other proceedings under the redevelopment law of the Commonwealth of Pennsylvania were faulty and thus subject to any collateral attack. Proper notice and opportunity to be heard is provided in the law at proper times for the challenge to such designations. The other proceedings are not now before this court and we must accept as the lower court did the completed legal determination long before the petition for the sale of the properties. The appellant has also argued that the taxing authorities over a period exceeding twenty years prevented the property from being developed. We have been pointed to no law which indicates that the authorities owning properties which have been received as a result of tax delinquencies are bound to do anything other than what was done here, namely, plan for the orderly development and disposition of the area either through public or private means.

The order of the lower court approving the petition of the City of Pittsburgh, as Trustee, for the sale of the

subject properties to the Urban Redevelopment Authority of Pittsburgh is affirmed.

***

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. Our role is to determine whether the lower court abused its discretion under the Act of July 5, 1947, P. L. 1258, No. 514, Section 14, as amended, 53 P.S. §26114, when it approved the $1.00 offer of the Urban Redevelopment Authority of Pittsburgh for two hundred ten (210) vacant lots in the 28th Ward of the City of Pittsburgh, and in so doing rejected the $53,000.00 offer of the appellant, Louis L. Grimm, for the same land.

The lower court's approval was based on two premises, neither of which seem valid to me. First, the lower court said: "Actually, what the city wants to do here as Trustee of the three taxing bodies is to give this property to the Urban Redevelopment Authority, which it has the right to do under the Urban Redevelopment Law, Act of May 24, 1945, supra. Proceeding under the Act of July 5, 1947, supra, because of a *legal technicality* raised by the title companies *should not defeat* the city's intended purpose to make this property available to the Urban Redevelopment Authority for development purposes." (Emphasis supplied.) The lower court is simply concluding that, since this transaction could have been culminated under another act, it therefore should be achieved under the act pursued. The lower court itself points out the fallacy of such reasoning when it said, "However, since the city elected to proceed under that Act, [Act of July 5, 1947, P. L. 1258, No. 514, as amended, 53 P.S. §26101] the disposition of the proceeding must be determined under that Act." Certainly this is true but even though recognizing this truth the lower court decided that since the city could have transferred title to the Urban Redevelopment Authority of Pittsburgh in another way, the pro-

visions of the Act under which the instant proceeding was undertaken "should not defeat" such a transfer. I do not accept such rationalization.

Second, the lower court based its decision on what would be in the "best" interest of the three taxing bodies in "the long run". I find no language in the Act in question that allows such speculation as to future events. The wording of Section 14 of the Act of July 5, 1947, *supra,* 53 P.S. §26114 is both specific and brief, as it relates to the question here. ". . . the court shall fix a time . . . for all persons to appear before said court and make offers for said land, and the court may approve such offer, as in its discretion appears to be in the interest of all taxing authorities having claims against the land. . . ."

It is the *offer* made for such land that the court may exercise discretion toward. It is not the court's evaluation of the future utilization of the land to which its discretion may be directed. Here there were two offers, one in the amount of $53,000.00 and the other $1.00. The lower court said in its opinion: "On the surface *there is no question* that it would be *advantageous for the taxing bodies* to accept $53,000.00, *but . . .*" (Emphasis supplied.) There is no "but" to it since it is the offer that the language of the Act in question requires the court to approve and to exercise discretion toward. The lower court correctly states that "there is no question that it would be advantageous for the taxing bodies to accept $53,000.00" and as between the two offers it would seem next to impossible to conclude otherwise. Yet, the majority today approves the lower court's speculation about what will be in the best interest of the three taxing bodies in the future. The Act does not use the term, "best interest", but merely states "such offer as . . . in the interest" of the taxing bodies. However, the important point is that it is the *offer* that is in the interest of the taxing bodies,

not the *plans for future development of the land* toward which the lower court must direct its discretion.

At the time persons come before the court to "make offers for said land," they are under no obligation to present to the court plans, detailed or otherwise, for the anticipated use of the land. The provisions of 53 P.S. §26114 deal with the approval of an offer in the case where *"any person shall appear and . . . contest the adequacy of the price* for which the city or school district has agreed to sell said land. . . ."* The appellant did contest the adequacy of the $1.00 price for which the city had agreed to sell the land. The lower court, following the mandates of 53 P.S. §26114, fixed a time for all persons to appear before the court and make offers for the land. Two offers were made and the Act required the court to exercise its discretion as to which of those two offers would be in the interest of the taxing authorities having claims against the land. I can only conclude that it was an abuse of discretion for the lower court to approve the $1.00 offer instead of the $53,000.00 offer.