In re UNIVERSAL MINERALS, INC., a Pennsylvania corporation, and Cambria Mining and Manufacturing Company, a wholly owned subsidiary, Bankrupt.

UNIVERSAL MINERALS, INC., Cambria Mining and Manufacturing Company, Johnstown Bank & Trust Company, Republic Steel Corporation and George Zamias, Plaintiffs,

v.

COUNTY OF CAMBRIA, Cambria County Tax Claim Bureau, David M. Jenkins and Merle B. Lauer, Defendants.

Bankruptcy No. 78–696.

United States Bankruptcy Court, W. D. Pennsylvania.

Jan. 22, 1982.

I. Samuel Kaminsky, Kaminsky, Kelly, Wharton & Thomas, Johnstown, Pa., for trustee. Thomas A. Swope, Jr., Swope & Neugebauger, Ebensburg, Pa., Myron I. Markovitz, Gleason, DiFrancesco, Shade & Markovitz, Johnstown, Pa., Dino S. Persio, Francis Mardula, Lawrence L. Davis, Davis & Davis, Ebensburg, Pa., Samuel D. Clapper, Barbera & Barbera, Somerset, Pa., Samuel F. Rizzo, Johnstown, Pa.

John W. Taylor, Ebensburg, Pa., for Cambria County.

Mark L. Glosser, Lampl, Sable & Makoroff, Pittsburgh, Pa., Sanford M. Lampl, for debtor in possession.

Edmund S. Ruffin, III, Ronald J. Werhnyak, Thorp, Reed & Armstrong, Pittsburgh, Pa., for Republic Steel.

## MEMORANDUM OPINION AND ORDER

JOSEPH L. COSETTI, Bankruptcy Judge.

This matter comes before the Court on the Complaint by the Trustee for the Bankrupt and the first, second and third mortgage holders to determine the validity of the ownership interest asserted by the Defendants as the result of non-payment of taxes in certain mineral tracts located in Cambria County, Pennsylvania. A sale of the Bankrupt's assets is scheduled for January 26, 1982, and this Court is urged by the Plaintiffs to either divest the Defendants' interest in the property or to order the sale of the subject property at the sale in order to maximize the Bankrupt's estate and have the tax claims attach as a priority to the proceeds of the sale. For the reasons stated below, this Court Orders that the subject property be sold at the sale scheduled for January 26, 1982 in this Court.

Trial on this matter was held on December 14, 1981 and January 14, 1982. This Order does not deal with the claims of Jenkins and Lauer, because a settlement agreement has been reached as to those claims.

## HISTORY OF THE CASE

On October 27, 1978 the Bankrupt filed a petition under Chapter XI of the Bankruptcy Act and was named Debtor in Possession. On December 3, 1979, the first and second mortgagors applied to this Court to lift the stay on the properties secured by their mortgages. This Court declined to do so at the first hearing held on that matter, but after other hearings in response to that action, on April 23, 1981 this Court Ordered the appointment of a Trustee, Thomas E. Light, who was directed to proceed with a sale of all assets of the Bankrupt.

In September of 1979 the County was estopped from selling certain of these tracts by an Order of former Judge Schaffler of this Court. That Order was modified to allow the County to sell certain tracts following a hearing on November 26, 1979. Neither the mortgagors or the attorney for the then Creditors Committee were notified of that hearing.

## FINDINGS OF FACT

On or about October 25, 1962 and August 23, 1963, the County purported to acquire ownership of various tracts of minerals owned by Cambria Mining and Manufacturing Company or its predecessors in title by virtue of Treasurer's sales for delinquent taxes held on those dates by the Treasury of the County. The properties were then titled in the names of various predecessors. The County routinely bids the taxes when no third party bids were received. The County does not record the tax deeds in the Recorder's Office, but tax deeds are recorded in the Treasurer's Office. At trial testimony was introduced that the County's claim of ownership did not appear in the chain of recorded title in a title search conducted for a perspective purchaser of these mineral tracts several years ago. It is uncontested that the Bankrupt and Mortgagor acquired title to these properties from its successor in interest in 1975 without discovering notice of these tax deeds.

At the trial, the testimony revealed that the Defendant had allowed the Bankrupt to redeem property for taxes due, after the Act of 1947 which became effective in Cambria County on January 1, 1976, even though the statute appears to remove a right of redemption. (See argument infra.) The Plaintiffs argue that the County is estopped now to deny redemption because of the County's practice. It is clear that the County permitted redemption for taxes by many taxpayers, including the Bankrupt. The County argued that such acts were unauthorized and therefore that the estoppel argument was not applicable. Nevertheless, the Commissioners and the Treasurer permitted redemption to occur.

Testimony was presented that the assessment and tax deeds of mineral properties in Cambria County was in a very poor state when the present Commissioners took office. The present Commissioners have embarked on a program to correct these problems and have been making a great deal of progress. Nevertheless, the tax deed records for the period in question were not considered reliable.

The County, through the President of the County Commissioners, presented evidence that the Tax Claim Bureau (hereinafter "Bureau") was properly established on January 1, 1976. However, the Bureau did not function fully and effectively until about six months or so later. The Treasurer of Cambria County testified that she continued to allow redemptions after the Bureau was established with the approval of the County Commissioners' Office. The head of the Tax Claim Bureau testified that he had routinely allowed redemptions until the spring of 1981, when he was told to discontinue the practice. Even so, he testified that he would have allowed the Bankrupt to redeem the property in question even after this advice was received, except that he had already commenced the advertising for a private sale of the properties and decided to proceed.

The second mortgage holder, Republic Steel Corporation, had engaged in an extensive drilling program on the Bankrupt's property to assess the value of the Bankrupt's mineral holdings.

The President of the Bankrupt testified that much of the C Prime seam in dispute was not considered valuable until Republic Steel Corporation began a drilling program on the property in approximately 1977. As a result of the analysis of Republic's drilling cores, the Bankrupt determined that the C Prime coal was mineable and that the properties shown in Exhibit No. 5 were valuable. At that time, efforts were begun to redeem the property.

Additionally, an employee of the County, who was an expert at mapping the underground properties, testified that the Republic data had come into his possession and that he made such data available to the public and potential buyers, including Mr. Jenkins.

DISCUSSION

A. *Jurisdiction*

The Defendants argue that this Court has no jurisdiction to hear this Complaint. Before this issue can be decided, this Court must make inquiry into whether the Bankrupt has a substantial claim in the subject property. Because this is a case under the Bankruptcy Act, the Court must distinguish between summary and plenary jurisdiction. The Defendants urge the Court to find that the subject property is held adversely to the bankrupt estate and that the Court lacks summary jurisdiction. This holding, therefore, would require the Trustee to pursue an independent lawsuit in the District Court. *Harrison v. Chamberlain*, 271 U.S. 191, 193, 46 S.Ct. 467, 468, 70 L.Ed. 897 (1926).

> However, the court is not ousted of its jurisdiction by the mere assertion of an adverse claim; but having the power in the first instance to decide whether it has jurisdiction to proceed, the court may enter upon a preliminary inquiry to determine whether the adverse claim is real and substantial or merely colorable and if found to be merely colorable the court may then proceed to adjudicate the merits summarily; but if found to be real and substantial it must decline to determine the merits and dismiss the summary proceeding. Ibid at 271 U.S. 194, 46 S.Ct. 468.

The Plaintiffs in this action assert that the claim of the Defendants in the subject property is merely colorable. This is based on two theories. First the Plaintiffs argue that they have a right of redemption in the subject property, and secondly they argue that the Defendants only have a right to the taxes due and not to any excess monies raised by a sale of the property. The Plaintiffs argue the right to excess monies is a property right belonging to the Bankrupt along with the right of redemption. If the Plaintiffs are correct, then this Court has summary jurisdiction over this controversy.

■ Further, the Court takes judicial notice that in earlier litigation involving the properties taken for taxes, the Defendant voluntarily submitted to the jurisdiction of the Court by requesting that it lift the stay order of September 26, 1979 issued pursuant to Rule 11–44.

B. *Property Rights of the Bankrupt*

■ The mineral tracts were offered by the County at tax sales in 1962 and 1963.

Prior to the adoption by the County of the Real Estate Tax Sale Law (72 P.S. § 5860.-101 et seq as amended) [hereinafter the "Act of 1947"], legislation which controlled the disposition of property taken by the County for non-payment of taxes was controlled by an act adopted in 1941 (72 P.S. § 6105.1 et seq) [hereinafter the "Act of 1941"]. The Act of 1941 gave the debtor the absolute right of redemption as long as the property purchased at any tax sale by any political subdivision remained in that political subdivision. (1941, July, 28 P.L. 535 § 1, as amended 1974, March 22, P.L. 200, No. 40 § 1).

The Act of 1947 set up a scheme whereby property acquired by the County and retained by the County would be turned over to an entity completely controlled by the County called the Tax Claim Bureau for disposition. Property that was held by the County prior to January 1, 1976, the effective date of the Act of 1947 in Cambria County, was similarly turned over to the Tax Claim Bureau. The Act of 1947 also provides at Section 702:

> The property turned over to it [the Bureau] *shall not be subject to redemption,* and until finally sold, as hereinafter provided, the Bureau shall manage and control the property for the trustee county . . . . [emphasis supplied]

The Pennsylvania Supreme Court has held that this redemption provision of the Act of 1947 is constitutional, *Bernitsky v. the County of Schuylkill,* 381 Pa. 429, 112 A.2d 120 (1955), and not a violation of either procedural or substantive due process. The Supreme Court reasoned that the redemption right was not a vested right but a creation of statute and therefore could be taken away by statute. This Court harbors serious reservations about the power of the states to *retroactively* without further notice and process take property rights. [See e.g. *Piqua Branch of the State Bank v. Knoop,* 16 How. 369, 14 Ed. 977 (1854) wherein the United States Supreme Court would not permit a state tax exemption to be revoked by subsequent statute because of the Contract Clause limitation of the Constitution.] However, it is not necessary to decide this Constitutional issue at this time because the Pennsylvania Supreme Court has recognized that those parties whose property was taken under the Act of 1941 but administered pursuant to the Act of 1947 have a right to excess, which is functionally equivalent under the facts of this case to a right of redemption. For this reason, as well, this Court declines to decide whether or not the County is estopped from denying these Plaintiffs the right to redemption.

The duties imposed on the Tax Claim Bureau following the sale of property include:

> Pay out the proceeds arising from such sale in the order of their priority, first, the costs of sale and the proceedings upon which it is made; second, the tax liens of the Commonwealth; third, taxes and costs due thereon; fourth, municipal claims and costs due thereon; fifth, lien holders in the order of their priority; and sixth, any balance remaining to the real owner at the time of sale. 72 P.S. § 5860.304.

This section has been interpreted by the Pennsylvania Supreme Court in a case which also discussed the import of *Bernitsky,* cited above.

The learned court below concluded that, since the Real Estate Tax Sale Law of 1947 terminates a tax delinquent's right of redemption after possession of his property has passed to the Tax Claim Bureau, his right to the excess proceeds from the Bureau's sale of the property likewise comes to an end correspondingly. The fallacy in the court's reasoning lies in the fact that neither the Act of 1947 nor the *Bernitsky* case makes the former owner's right to the excess proceeds from the Bureau's sale of his property dependent upon the contemporaneous existence of a right of redemption in him at the time of such sale. On the contrary, the rights and priorities of those entitled to the proceeds of a sale of property by the Tax Claim Bureau are specifically spelled out in the Act of 1947.

Section 304 provides that "... the bureau selling such property shall, through the county treasurer, pay out the proceeds arising from such sale in the order of their priority, first, the costs of sale and the proceedings upon which it is made; second, the tax liens of the Commonwealth; third, taxes and costs due thereon; fourth, municipal claims and costs due thereon; and fifth, any balance remaining to whomsoever entitled thereto." The category last above stated is obviously broad enough to include the former owner. *The provision was undoubtedly so intended, especially, in view of the prior law with respect to the right of the former owner to the excess—a right which the Act of 1947 evidences no intention to abolish. A taxing district's only legitimate interest in the proceeds derived from a conversion of property acquired by it for nonpayment of taxes is the satisfaction in full of all tax claims and municipal liens, etc., against the property, including interest, penalties and costs. It is not the policy of the law that a taxing authority shall obtain a windfall out of a delinquent taxpayer's property because of his financial difficulties.*

By Act of May 6, 1955, P.L. 40, 72 P.S. § 5860.304 Pkt. Part, the above-quoted provision of Section 304 of the Act of 1947, as amended, was further amended so that the "fifth" category imposed on a Tax Claim Bureau the duty of paying, through the county treasurer, "any balance remaining to the real owner at the time of sale", meaning, of course, the delinquent former owner. As the condemnation here involved occurred in 1953, it is clear that the law governing the distribution of the proceeds from the conversion of the property, while in the Bureau's hands, is the Act of 1947, amended by the Act of June 30, 1951, P.L. 991, in part not now material. The amendment of 1955 is, however, so plainly declaratory of existing law—merely making specific what theretofore was stated in general terms—that the Act of 1947 is to be interpreted in keeping with the intent imputed to it by the 1955 amendment. The

present appellants are, therefore, entitled to the balance of the proceeds from the condemnation remaining after the payment of all tax claims, municipal liens and costs according to their priority as ordained by Section 304 of the Act of 1947, as amended. (Emphasis supplied.) *Fayette County Commissioners Petition,* 386 Pa. 382, 386–8, 126 A.2d 737, 739–40 (1956).

These same principles were reaffirmed in a recent Pennsylvania Commonwealth Court case. The Commonwealth Court distinguished between the rights of two classes of property.

The first class encompasses all property returned to the bureau after its creation, against which there are delinquent taxes for the preceding calendar year. As to this class, upon sale of the property by the bureau to recoup delinquent taxes, the proceeds are distributed as provided by section 205 of the Act, 72 P.S. § 5860.-205 (Supp.1974–1975). As here relevant, in the event that the sale price is in excess of the upset price, this section provides that "the balance remaining shall be paid to the owner of the property sold."

The second class of property—and the class with which we are here concerned—encompasses property acquired by the county or another taxing district through the purchase thereof at a tax sale prior to the effective date of the Act and turned over to the bureau thereafter as mandated by Section 701 of the Act, 72 P.S. § 5860.701. This class of property is sometimes referred to as "inventory" property in the hands of the bureau. With respect to this class of property, section 702 of the Act, 72 P.S. § 5860.702 in relevant part, provides:

"[T]he bureau shall manage and control the property for the trustee county with power ... (h) to sell the property at private sale ... and to make deeds for such property when sold in the manner provided by and subject to the provisions of sections 613, 614 and 615 *in so far as they may be applicable.*" (Emphasis added.)

Section 702 does not address itself to the distribution of the proceeds of a private sale of this [inventory] class of property nor do sections 613, 614 or 615 to which section 702 private sales are subject "in so far as they may be applicable." However, section 304 of the Act, 72 P.S. § 5860.304 (Supp.1974–1975), does provide that after payment of costs, tax liens and claims and other liens, any balance remaining shall be paid to "the real owner at the time of sale." Without discussing the meaning of "owner" as to this class of property as defined in section 102 of the Act and recognized in section 205, to be the county as trustee for all taxing districts, the Supreme Court in *Fayette County Commissioners' Petition*, 386 Pa. 382, 387, 126 A.2d 737, 740 (1956), has interpreted "the real owner at the time of sale" to mean the delinquent former owner. Hence, as to this class of property, any balance remaining after satisfaction of all claims is to be distributed to the former owner, as is the case with respect to distribution of such excess to the delinquent owner in the first class of properties. *Breinig v. North Penn School District*, 19 Pa.Comwlth.Ct. 377, 379–80, 339 A.2d 617, 618–19 (1975).

Thus, while the Pennsylvania Legislature may have enacted a statute which takes away a right of redemption to "inventory property", it is clear that there remains for the former or real property owner a practical equivalent because the taxing body obtains no more than the taxes due. See also *Fayette County Commissioners Petition*, supra, 386 Pa. at 382, 126 A.2d at 437; *Pa. Game Comm. v. Lackawanna County Tax Claim Bureau, et al*, 55 Pa.Cmwlth.Ct. 91, 94, 422 A.2d 1218, 1219 (1980).

The Defendant County argues that 72 P.S. § 5860.205 should control the distribution of proceeds from a sale of inventory property. That section provides in relevant part:

[T]he moneys received shall be paid over, first to the respective taxing districts in proportion to the taxes due them; second, the municipal claims against such property due any taxing district; third, mortgages and other liens in order of their priority; and fourth, *except in cases of property purchased by a taxing district prior to the effective date of this act and turned over to the bureau for sale*, the balance remaining shall be paid to the owner of the property sold. [Emphasis supplied.]

The County urges the Court to read with this section the definitional section of the statute that defines owner under these facts as the County in cases where property has been turned over to the Tax Claim Bureau. However, this reading fails to note that "inventory property" is specifically exempted from this section of the act. (See material underlined above.)

On similar facts, two Pennsylvania Supreme Court cases have said that Section 304 controls the distribution of "inventory property". This Court would have grave doubts as to the constitutionality of Pennsylvania's statutory scheme if both the right to excess and the right to redemption were taken away from the former owner without further process. Statutes should be interpreted as being constitutional. *Com. ex rel. Elkin v. Moir*, 199 Pa. 534, 49 A. 351 (1901). Therefore, we hold that the Pennsylvania Court has held that the right to excess exists in the former or real owner under these facts and that the taxing body only has the right to collect its taxes. To hold otherwise would subject the retroactive sections of this statute to constitutional challenge.

CONCLUSION

C. *Sale of the Property*

█ Based on the argument presented above, we conclude this Court has summary jurisdiction over this Complaint. The Plaintiffs urge this Court to order those certain properties in which the County claims by tax deeds be added to the sale of the assets of the Bankrupt scheduled for January 26, 1982. We would agree. The County because it is only entitled to taxes due cannot arbitrarily withhold this property from sale. If this were income producing property, the County could argue it

should be allowed to manage the property and collect the income. However, this property is not producing income, in fact, the Director of the Tax Claim Bureau in Cambria County stated at trial that he would have allowed the Bankrupt to redeem the mineral tracts in March of 1981 if said tracts had not already been listed for public sale. The Court is aware that the Pennsylvania Commonwealth Court has allowed taxing bodies to accept a lower price if there is a public purpose involved. *Grimm v. City of Pittsburgh*, 2 Pa.Cmwlth. 600, 279 A.2d 379 (1971). However, there is no public purpose served by allowing the County to delay this sale and, in fact, delay the collection of the taxes due. The public would best be served by the payment of the taxes and the property returned to assessment.

Because we have concluded that Pennsylvania Courts have held that taxing bodies are only entitled to the taxes due on those properties and that excess amounts that are generated at the sale must be distributed to the former owner, we, therefore, using the Court's equity powers to maximize the sale proceeds for the bankrupt estate, ORDER that the properties which the trustee intends to sell and in which the County claims an interest be sold in this Court on January 26, 1982 along with the other assets of the Bankrupt. It is further ORDERED that the interest of the County in those properties be transferred to the proceeds of the sale and that the County be paid the taxes due it from those proceeds after only costs of sale but prior to any other secured claims and administrative expenses.